## Isham and others *against* Gilbert.

**October 22.**  The testator, after directing large specific legacies to be paid, ordered that his son *P. R.*, whom he appointed his executor, should receive all his private securities, the dividends arising on his bank and United States stock, and all monies, and other property, not otherwise disposed of, in trust for the payment of legacies, and for the purpose of forming a family fund, the surplus, beyond what should be necessary for the payment of such legacies, and of the debts and charges against the estate, to be divided, two eleventh parts to his wife *durante viduitate*, and one eleventh part to each of his children. Under this will *P. R.* received of the testator's estate, bank stock, private securities and cash, amounting to 33,794 dollars, and a library of the value of 1.000 dollars. After all the legacies, debts and charges, payable out of the fund, or from the testator's estate, had been paid, the other children brought a bill in chancery against *P. R.*, stating these facts, and praying for a division. Held, 1. that the object in creating the trust being that the legacies, together with the debts and charges, might be paid, if necessary, out of the increment of the fund, without diminishing the principal, the fund was to be divided immediately after such payment was made ; and 2. that the plaintiffs being entitled to a division of the property *specifically*, their appropriate remedy was in chancery.

Where the defendant, as trustee of the plaintiffs, has received property, of which they have no account, and which they can prove only by his oath, chancery will compel him to make discovery ; and having acquired cognizance of the suit for that purpose, will follow it up with relief.

Although a court of chancery, having taken cognizance of a suit, for the purpose of a discovery, will not, of course, grant relief ; yet it will do it, in most cases of fraud, account, accident and trust.

THIS was a bill in chancery, stating the following case. On the 13th of *April*, 1808, *Samuel Gilbert* made his will, which, after ordering large specific legacies to be paid within certain times after his decease, contained, among others, the following provisions : " My just debts and funeral charges being first paid, I order all my private obligations, not otherwise disposed of, to be placed in the hands of my son *Payton Randolph ;* and likewise, that he shall receive the dividends and payments that may fall due from the *Hartford* bank and continental loan office ; and all other monies, not otherwise disposed of; in trust, for the payment of legacies, and for the purpose of forming a family fund, to be divided as follows : My wife to have two eleventh parts, during her widowhood, and not after, and all my children one eleventh part, each, of what shall not be necessary for the payment of debts, charges and legacies as aforesaid ; and if the part given to my said wife shall cease to be hers, then to my children ; said *Payton Ran-*

*dolph* reserving so much for his cost and trouble, as shall be reasonable, over and above his share.   My library I dispose of, in the same way and manner, to be used and divided in the same manner and proportion as the above.   In case there should appear to be any property belonging to me, at the time of my decease, which is not, by this will, devised or bequeathed, I order the same to be divided equally between all my children, or their issue."   On the 1st of *April*, 1816, the testator made a codicil to his will, in these words:   "I order, that all the interest and dividends arising on all my bank stock, not in said will particularly disposed of, be brought into, and made part of, the fund by said will to be created; and that the whole of the dividends, excepting as aforesaid, be disposed of, in the same manner as I have ordered and disposed of the dividends in the *Hartford* bank."   *Payton R. Gilbert*, the defendant, was appointed executor. The testator died on the 21st of *April*, 1818; and left, to constitute the said fund, bank stock, appraised at 20,129 dollars, obligations or securities against individuals, amounting to 11,000 dollars, cash on hand, amounting to 2,565 dollars, and a library of books, of the value of 1,000 dollars.   This property came to, and is now in, the hands of the defendant.   He has also received, since the testator's death, from the interest, dividends and payments on said bank stock, obligations and money, the sum of 6,000 dollars.   The bill further stated, that there had also come into the defendant's hands and possession, other property, received from book-debts, and other sources, a large sum, of which the plaintiffs had no account, and which they were not able to prove, otherwise than by the oath of the defendant; and that he had also received divers other sums of money belonging to said estate and said fund, which they could prove only by his oath.   All the just debts, funeral charges and legacies, payable out of said fund, or from the estate, had been paid; and said fund, after paying and discharging all claims upon it, before it was to be divided, amounted to the sum of forty thousand dollars; which the plaintiffs prayed might be divided, according to equity, and the provisions of the will.   They also prayed for an account. The defendant, after averring, that on the day when he accepted the trust of executor, he made a true and perfect inventory of all the estate of the deceased, demurred generally to the plaintiffs' bill.   The cause was continued; and the questions

*New-London,*
October,
1819.

Isham
*v.*
Gilbert.

of law arising therein, were reserved for the advice of all the Judges.

*Goddard* and *Isham*, for the plaintiffs, contended, 1. That the time had arrived, when, pursuant to the provisions of the will, the property constituting what the testator called *a fund*, was to be distributed. It was the testator's wish, that his property, consisting principally of bank stock, should go, *specifically* and *unimpaired*, to his heirs. But he had given large legacies; and he knew there would be debts and charges against the estate; all which must be provided for. He therefore placed this productive property in the hands of a trustee, to hold it until, from the *income* of it, he should be enabled to discharge these claims. This has been done; and if the trustee should retain the property any longer, he would thereby defeat, rather than promote, the object of the testator.

2. That the plaintiffs' remedy was in chancery. First, because they were entitled to the bank shares, and the other property in question, *specifically*; and this relief a court of chancery alone can grant. Secondly, because the plaintiffs call for the execution of *a trust*; a subject appropriately within the jurisdiction of a court of chancery. The property was not placed in the defendant's hands as executor, but as trustee; and the plaintiffs do not complain, that he has not done his duty as executor, but that he has not performed the trust. The court of probate has no power over him as trustee. Thirdly, because the plaintiffs ask for a discovery, in a matter of account, and in relation to a trust; which gives jurisdiction to a court of chancery.

*Lanman* and *Beebe*, for the defendant, contended, 1. That the testator's intention was, that the principal of the property in question should vest in the defendant as *a family fund*, to be held by him, in trust for the heirs, during his life, or until he should voluntarily surrender the trust; and that, therefore, no court was competent to compel a distribution. This position was enforced from a view of all the testamentary provisions, and the condition of the testator's estate, and that of his family.

2. That there was adequate remedy at law. If an *account* was necessary, each of the children might bring his action of account at law against the defendant. If the defendant

wrongfully withheld from the plaintiffs their property, they might sue him at law; and his having violated a *trust* would not protect him. Further, the defendant, as executor, was liable on his bond to the judge of probate; having inventoried this property, and placed it on record, in that capacity.

HOSMER, Ch. J. The words used by the testator, having a plain sense, and leading to no absurd conclusion, must be the standard, by which his intention is to be estimated. The trust created, extended not merely to the dividends arising on his stock, but to the stock itself. The money to be collected by the trustee, was to form a part of what the testator, very inaptly, thought proper to call *a family fund*. That he was to have, not only the possession of, but the legal estate in this, seems not to have been questioned. Although he was to receive the dividends and payment on the stock, by express appointment, even this bequest would be nugatory, if he were not vested with the legal right to the stock, that he might call for the increment arising upon it. Besides, he was to divide it; which he never could do, unless he had the right of possession, and power of distribution. To effectuate the manifest intent of the testator, the construction, that in the stock, as well as in the other personal estate, the trustee was to have the legal property, is perfectly indispensible.

The enquiry, then, arises, and this is the principal question, when was the stock to be distributed? I answer, immediately after the payment of the legacies, and the formation of the fund. The testator's wife was to have two eleventh parts, during her widowhood; and if the property should cease to be hers, it was to remain to his children. A *speedy* distribution, it is obvious, was contemplated. It was believed, by the testator, that a part of his estate might be vested in his widow; and during her life, that is, should she marry, that it would enure to the children. The expression, *family fund*, is ill adapted to this construction; but it would be unreasonable to lay such stress on this phrase, as to render it inconsistent with the intention of the testator, clearly resulting from other parts of the will.

It is contended by the defendant, that the trust was interminable, and that the interest alone was to be annually paid to the *cestuy que trusts*. This construction is in direct hostility with the distribution of the property, contemplated as possi-

New-London,
October,
1819.

Isham
.v.
Gilbert.

ble to happen during the life of the widow ; and is attended with the absurd consequence of placing under perpetual tutelage the testator's children, without the slightest pretence of their being under a mental or moral incapacity. If the question be asked, why, on this construction, did the testator bequeath his personal property in trust ? I answer, that the legacies bequeathed by him, together with the debts and charges, might be paid, if necessary, out of the dividends of the stock, without diminishing the principal. Whether, however, this was the precise object in view, this much is certain, that immediately after the legacies, debts, and charges were paid, the property was to be distributed. This event has happened, as the parties have mutually admitted.

The defendant has refused to render his account to the plaintiffs, and to divide the property in his hands ; and it is claimed in his behalf, that the plaintiffs have adequate remedy at law. The answers made to this suggestion, are obvious and convincing. It is demonstrably clear, on the construction I have given the will, that the plaintiffs are entitled to a distribution of the bank shares *specifically ;* and that the jurisdiction of chancery is necessary for this purpose. The probate court can compel the executor to discharge his duty as such ; but in relation to the property subjected to the trust, it effectually appears, that he has done it, from the fact, that it is in his possession as trustee under the will. Over the defendant, in that capacity, the probate court has no control.

Further, the plaintiffs demand a discovery. They aver, " that there has also come into the defendant's hands and possession other property, received from book-debts, and other sources, a large sum, of which the plaintiffs have no account, and which they are not able to prove, otherwise than by the oath of the said *Payton R. Gilbert.*" To this the defendant replies, that on the day when he accepted the trust of executor, he made a true and perfect inventory of all the estate of the deceased, according to law. This averment is not opposed to the allegation of the plaintiffs. The notes, bonds, and debts of the deceased may be, and probably were, inventoried ; but the avails of them, a posterior fact, are the subject of the plaintiffs' claim. There is no ground for the supposition, that the plaintiffs are able, independently of the defendant's oath, to prove the facts which they have averred. If the defendant is bound to make discovery, and of this there ex-

ists no doubt, chancery will follow it up with relief. Although a court of equity, which has acquired cognizance for the purpose of a discovery, will not, of course, grant relief ; yet it will do it, in most cases of fraud, account, accident, and trust. 1 *Fonb.* 11.

In result, it is apparent, that the plaintiffs have no adequate remedy at law, and that they have right to the remedy sought. I would, therefore, advise the superior court, that the demurrer to the defendant's plea be sustained.

*The other Judges were of the same opinion.*

Decree to be made accordingly.