No. 20,768.

School District No. Six, Weld County, *v.* Herbert
A. Russell, Mary Sander, and All Unknown Persons
who claim any Interest in the Subject Matter
of this Action.
(396 P.2d 929)

Decided November 30, 1964.    Rehearing denied December 21, 1964.

Hubert D. Waldo, Jr., Southard and Southard, for plaintiff in error.

Robert G. Smith, William E. Bohlender, for defendant in error Mary Sander.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

This action was commenced in the district court of Weld county by the plaintiff in error, to whom we will refer as the School District. It was brought under Rule 105, R.C.P. Colo., and the relief sought was a complete adjudication of the rights of all parties in and to the real estate described in the complaint.

Mary Sander, one of the named defendants in the action, appeared and asserted ownership to the property and sought a decree quieting her title thereto. The case was submitted to the trial court upon a stipulation of facts, the pertinent parts of which are as follows:

On March 11, 1890, one Herbert A. Russell owned the land in question. On that date he executed a warranty deed to School District No. 86 of Weld county, conveying the property involved in this controversy. The deed contained the following provision:

"It is understood and agreed that if the above described land is abandoned by the said second parties and not used for school purposes then the above described land reverts to the party of the first part."

On June 4, 1930, the said Herbert A. Russell died

intestate. His wife, Agnes F. Russell, was his sole heir. She died May 20, 1950. Mary Sander is the grantee in a deed from persons who were the heirs and devisees of the said Agnes F. Russell. This deed was executed after the abandonment of the land for school purposes.

On October 18, 1959, through a consolidation of school districts in Weld county, School District No. 86, the grantee in the original Russell deed, was consolidated with and became a part of School District No. 6. It is not disputed that all rights originally acquired by School District No. 86 were transferred to the new consolidated district. It was stipulated that in June 1960 the land in dispute ceased to be used for school purposes and was permanently abandoned and will not again be so used.

The trial court denied the school district the relief sought by its complaint; sustained the counterclaim filed by Mary Sander; and entered a decree, "That the defendant Mary Sander is now the owner in fee simple absolute in and entitled to the possession of" the property involved in this litigation. It was further adjudged:

"2. That neither the plaintiff, School District No. Six, in the County of Weld and State of Colorado, nor the defendant Herbert A. Russell, nor any unknown persons who claim any interest in the subject matter of this action has any right, title, interest, estate or lien whatsoever in, to or upon said property or any part thereof."

The School District is here on writ of error to review that judgment.

Counsel for Mary Sander argue that the judgment of the trial court should be affirmed for the following reasons:

(1) That the interest of the school district which was created by Russell in his deed to District No. 86 was a determinable estate on limitation — a qualified, base fee with a possibility of reverter.

(2) That the words of limitation upon the grant to the school district "mark the period which is to determine the estate"; that when the event occurred which termi-

nated the estate it was ipso facto terminated without affirmative action on the part of the grantor or his heirs; and

(3) That although Russell died prior to the occurrence of the event which terminated the estate of the school district, "the possibility of reverter" immediately passed to his heirs as of the time of his death.

As grounds for reversal of the judgment counsel for the School District argue:

(1) That the estate created in the school district by the deed of Russell was an estate on condition subsequent "with Russell's interest being merely a right of entry."

(2) That neither the grantor nor anyone claiming through him exercised "the option and right of re-entry" by affirmative action within the statutory period of limitation of one year following the happening of the event creating a breach of the "condition subsequent," and that the "condition subsequent" was thereby removed from the title of the school district.

(3) That at common law the possibility of reverter brought into being by a determinable estate on limitation (as contended for by Sander) was not an estate in land which was subject to grant, devise or inheritance; and upon termination of the estate it did not pass by descent to the heirs of the grantor, who qualified as such at the time of his death; that those entitled to the estate upon termination are to be determined as of the date of the happening of the event which puts an end to the estate, and not as of the date of death of the grantor; that from the date of the death of Russell in 1930, until 1960 when the land was abandoned for school purposes, the interest retained by Russell was not of sufficient quality to descend to his heir; that instead it remained "in the clouds (in nimbus) after creation until the fee determined, then it rained down upon the person who then was the heir of the grantor."

With reference to the question as to whether the

deed created an interest in the school district of an estate on condition subsequent with the right of re-entry for condition broken, we hold that the rule as announced by this court in *Denver & Santa Fe Railway Co. v. School District No. 22,* 14 Colo. 327, 23 Pac. 978, requires a negative answer. We quote from the opinion in that case as follows:

" * * * on September 15, 1880, Peter Magnus, then the owner in fee of the lots mentioned, conveyed them to appellee (the school district) upon condition that the land should be used for school purposes, and that when such use should cease the property should revert to him; * * * "

"The deed contains the following covenant: 'It is hereby agreed that the said above-described property is to be used for school purposes, and that, *whenever it shall cease to be so used,* the said property shall revert to the grantor herein, his heirs and assigns, and this said agreement is hereby declared to be a covenant running with the said lots.'

\*    \*    \*

"The legal effect of the deed first made by Magnus to appellee is clearly apparent. It was in form an ordinary quitclaim deed, and divested the grantor of all his right, title and interest in the land. The covenant providing that, when the premises should be no longer used for school purposes, the title should revert to the grantor, *was clearly a limitation.* The title conveyed, therefore, was a *qualified fee.* Whenever the event might occur upon which the limitation was based, the estate of appellee (school district) would immediately cease. * * * " (Emphasis supplied.)

The rule embodied in the foregoing quotation is generally well established throughout the nation. We quote from 4 "Thompson on Real Property," § 1859, (1961 Replacement):

"Where one desires to transfer property or an interest therein to another but to limit the use thereof he may

do so by establishing one of several legal situations. * * * by the proper language the transferor may create a *fee simple determinable* in the transferee, the fee determining when the intended use ceases." (Emphasis supplied.)

In King on "Future Interests in Colorado," p. 15, we find a pertinent analysis of the subject under consideration, which we quote as follows:

## "POSSIBILITIES OF REVERTER

"1. *Definition.* A possibility of reverter is the interest remaining in the grantor, or in the heirs of the devisor, when the owner of land in fee simple absolute has conveyed or devised the land in fee simple determinable or (what is the same thing) in fee simple subject to a special limitation.

"This definition obviously needs explanation. It doesn't help the reader very much. It compels him to define the words 'fee simple determinable' in order to understand what is meant by possibility of reverter. As Simes says, 'To define it is to define a determinable fee * * *.'

"When the apparent intent of the grantor or devisor is to create an estate to last *for an indefinite time,* measured not in lives or in years but in terms of use or the continued existence of some thing or situation (as, for example, 'so long as the property is used as a hospital'), and to have the estate end *automatically* when the land is no longer used for that purpose or the prescribed situation no longer exists, the estate so created is a fee simple determinable. The reversionary interest, *the possibility* that the land will come back to the grantor or the heirs of the devisor when the specified situation no longer exists, is the possibility of reverter."

Considerable confusion can be found in decided cases growing out of the use of specific words imposing conditions upon the use of real property. In some cases, language restricting the use of real estate has been held to create a possibility of reverter which automatically terminated the estate on the cessation of the delimited

use. *Carr v. Georgia Ry.*, 74 Ga. 73. In other cases, comparable language to that employed in the case at bar has been held to create an estate upon condition subsequent giving rise to a right of entry for breach of the condition. *Cornelius v. Ivins*, 26 N.J.L. 376.

▉ Illuminating language to point up the distinguishing characteristic is aptly set forth in 1 American Law of Property, section 2.6, at page 97, as follows:

" * * * If the purpose is to compel compliance with a condition by the penalty of forfeiture, an estate on condition arises, but if the intent is to give the land for a stated use, the estate to cease when that use or purpose is ended, no penalty for a breach of condition is involved, since the purpose is not to enforce performance of a condition, but to convey the property for so long as it is needed for the purpose for which it is given and no longer. Therefore, in spite of language of condition, if the prevailing purpose is to create a collateral limitation of this kind, and not to enforce a condition by a threatened forfeiture, a fee on limitation results. * * * "

Juxtaposing the above quoted statement with the language contained in Russell's deed, it should become quite clear that Russell's purpose in imposing the condition contained in his deed was not to "compel compliance with a condition by the penalty of forfeiture" but was rather "to convey the property for so long as it is needed for the purpose for which it is given and no longer." Stated more concretely, Russell's purpose was to convey the property in question for a period of time during which it would be used for school purposes and upon the cessation of the circumscribed use the conveyance would automatically become inoperative. Clearly, Russell's purpose was not to compel compliance with a condition by the imposition of a penalty for its breach. Accordingly, an estate in fee simple determinable was created in the instant case. On this question the position of counsel for Mary Sander is correct and the trial court did not err in ruling to that effect. A few of the cases

from other jurisdictions upholding the application of this rule to facts comparable to those in the instant case are: *Connecticut Junior Republic Assn. v. Litchfield,* 119 Conn. 106, 174 Atl. 304, 95 A.L.R. 56; *North v. Graham,* 235 Ill. 178, 85 N.E. 267, 18 L.R.A. (N.S.) 624, 126 Am. St. 189; *Slegel v Herbine,* 148 Pa. 236, 23 Atl. 996, 15 L.R.A. 547.

■ The resolution of the question hereinabove discussed, in the manner indicated, disposes of this controversy. Clearly, when the School District abandoned its use of the property for school purposes, all of the interest which the district theretofore had in that land was automatically terminated. A plaintiff, in an action to quiet title to lands, must rely on the strength of his own title thereto; and when it affirmatively appears that such plaintiff's rights have terminated, he is in no position to question the legality of the title claimed by others. *Goodrich v. Union Oil Co.,* 85 Colo. 218, 274 Pac. 935.

■ We now turn our attention to the contention of counsel for the school district that the heirs of Russell must be determined by ascertaining who would qualify as his heirs if his death had occurred in June 1960. Some jurisdictions have adopted the rule that a possibility of reverter "rains down" upon those who would qualify as heirs of the person creating the limitation as of the time when the estate of his grantee is terminated.

King, in his work on "Future Interests in Colorado," in this connection says:

"A much better rule, that the possibility of reverter is cast by *descent* upon the person's heirs, at the time of his death, is stated in the leading case of North v. Graham, 235 Ill. 178, 85 N.E. 267, 18 L.R.A. 624."

With this statement we agree, and the rule as set forth in *North v. Graham,* supra, is hereby approved.

Applying that rule to the facts of this case, all of which are agreed upon, we find that, on the death of Russell, his sole heir was his wife; she then stood in his

place in so far as the possibility of reverter is concerned; and upon her death her heirs stood in her place with relation thereto. In the instant case it appears that Mary Sander secured a deed from persons who, through inheritance and devise succeeded to the rights originally held by Russell under the possibility of reverter created by him. This deed was executed and delivered after June 1960 when the possibility of reverter had already ripened into an absolute title.

The opinion in *Union Colony Co. v. Gallie*, 104 Colo. 46, 88 P.2d 120, contains language which has created confusion and uncertainty in the law with regard to the problem here presented. There we find the statement, "At common law * * * the right of re-entry for condition broken, sometimes described as a possibility of reverter, could not be assigned." This would indicate that the right of re-entry for condition broken (condition subsequent) and the possibility of reverter are synonymous terms. Actually there has always been a vast difference between them. Another statement contained in that opinion and appearing at page 53 thereof, is as follows:

" 'A conveyance upon condition subsequent vests in the grantee a qualified fee, and, until the happening of the event that is to determine the estate granted, the grantor is divested of all right and interest in, and all title to, the land.' "

Claimed authority for this statement is the opinion in the case of *Denver & Santa Fe Ry. Co. v. School District No. 22*, supra. No such statement appears in that opinion. Actually the quotation is from the opinion in *People v. Koerner*, 92 Colo. 83, 18 P.2d 327, in which *Denver & Santa Fe* is relied on. No such rule was announced in the *Santa Fe* case. It is not an accurate statement for the simple reason that a conveyance on condition subsequent does not vest in the grantee a "qualified fee" as that term is applied in the law with relation to future interests in property.

In *Union Colony Co.,* supra, the correct result was reached for the reason that the "future interest" there under consideration was clearly one giving rise to a right of entry for a breach of condition subsequent. There was no "possibility of reverter" involved in that case, and any statement in that opinion with reference thereto is pure dictum.

It is apparent that the court, in that opinion, did that which *King,* supra, cautioned against, namely:

"(a) Don't confuse the possibility of reverter with rights of entry for condition broken or with reversions. Don't assume that an interest is a possibility of reverter merely because a court or a text writer call it 'a possibility of a reverter' or 'a possibility of a reversion.' They frequently apply these terms to rights of entry."

The judgment of the trial court was correct and it is affirmed.

MR. JUSTICE HALL concurs in the result.