The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 28, 2017

2017COA159

**No. 16CA1494, *Lakewood v. Armstrong* — Real Property — Easements Appurtenant — Easement Deeds — Dominant Estate**

This case addresses several issues concerning easements appurtenant. A division of the court of appeals concludes: (1) an easement deed is valid even though the deed does not describe a dominant estate and contains only one legal description that encompasses both the servient estate and the easement; (2) a court may review undisputed extrinsic evidence to determine whether the easement's location and the dominant estate are described with reasonable certainty such that the deed is valid and enforceable; and (3) a county may acquire an easement for a city's and the public's use. The division also rejects the appellants' arguments that they did not have notice of the easement and that a reverter

clause in the deed had been triggered by the dominant estate's

zoning.

COLORADO COURT OF APPEALS                                    **2017COA159**

Court of Appeals No. 16CA1494
Jefferson County District Court No. 15CV31593
Honorable Randall C. Arp, Judge

City of Lakewood, Colorado, a Colorado home rule municipality,

Plaintiff-Appellee,

v.

Joyce B. Armstrong and Mary E.J. Armstrong Trust,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE HAWTHORNE
Dailey and Welling, JJ., concur

Announced December 28, 2017

Hoffmann, Parker, Wilson & Carberry, P.C., M. Patrick Wilson, Kathryn M. Sellars, Denver, Colorado, for Plaintiff-Appellee

Timmins LLC, Jo Deziel Timmins, Edward P. Timmins, Denver, Colorado, for Defendants-Appellants

¶ 1     Defendants, Joyce B. Armstrong and the Mary E.J. Armstrong Trust (the Armstrongs), appeal the district court's summary judgment for plaintiff, City of Lakewood (Lakewood), declaring that a deed conveying an express easement over the Armstrongs' property was a valid and enforceable easement appurtenant.  We affirm.

## I.     Facts and Procedural History

¶ 2     The undisputed facts establish that on June 18, 1984, Lois Jones Mackey executed a deed (Mackey deed) purporting to convey a "permanent public easement for ingress and egress" over a portion of the southeast corner of her property to Jefferson County. The deed was recorded in the Jefferson County Clerk and Recorder's Office that same day.  Lakewood owned property directly east and north of Mackey's property, but Jefferson County did not own any adjacent property.  Lakewood's adjacent property consisted of the Bear Creek Greenbelt.

¶ 3     A month later, Jefferson County executed a deed to Lakewood (Commissioners deed) conveying the Mackey deed easement using the same legal description.  The Commissioners deed contained a reverter clause that required Lakewood to use the easement

exclusively for public open space, park, and recreational purposes. This deed was recorded in October 1984 in the Jefferson County Clerk and Recorder's records.

¶ 4 In 2011, the Armstrongs bought the property from Mackey's successor in interest and occupied it. At some point, the Armstrongs attempted to obstruct the easement's use by locking a gate at one entrance to it. In 2015, Lakewood filed an action for quiet title, declaratory judgment, prescriptive easement, trespass, reformation of the Commissioners deed, and preliminary and permanent injunctive relief. The Armstrongs answered and counterclaimed for quiet title, asserting that the easement was invalid. Lakewood requested partial summary judgment on its claims for declaratory judgment, quiet title, and reformation of the Commissioners deed. The Armstrongs filed a cross-motion for summary judgment in their favor on all of Lakewood's claims.

¶ 5 Before trial, the district court granted Lakewood's summary judgement motion for declaratory judgment, quiet title, and

reformation.[1]  The court found that the easement was a valid express easement appurtenant over the Armstrongs' property for use by the public and Lakewood.  The court denied the Armstrongs' motion for summary judgment and entered a final order and decree.

## II.    Standard of Review

¶ 6      The court's summary judgment noted that "[t]he parties agree that . . . there is no genuine issue of material fact in dispute as to the question of whether an express easement exists and that this issue is appropriate for resolution on summary judgment." Because all issues raised by the Armstrongs on appeal were decided by summary judgment, the parties agree that a de novo review standard applies.  We agree.

¶ 7      We review an appeal of a summary judgment de novo. *Edwards v. Bank of Am., N.A.*, 2016 COA 121, ¶ 13.  Summary judgment is a drastic remedy and should be granted only when the pleadings and the supporting documents demonstrate that no

---

[1] More precisely, the court granted Lakewood's revised motion for partial summary judgment.  Also, the court subsequently amended its summary judgment order, which clarified the extent of the easement, corrected the Armstrongs' chain of title, and corrected the parties' maintenance obligations under the easement.

genuine issue of material fact exists and that the moving party is legally entitled to judgment. *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002).

### III. The Commissioners Deed Is Valid Because the Easement Is Described with Reasonable Certainty

¶ 8 The Armstrongs assert that the district court erred in granting Lakewood's motion for summary judgment because the Commissioners deed violates the statute of frauds and is void "because it fails to legally describe the easement itself or the dominant estate." We disagree.

### A. Applicable Law

¶ 9 An interest in real property, including an express easement, must be created by act or operation of law or contained in a deed or conveyance and subscribed by the party creating or assigning the interest to satisfy the statute of frauds. § 38-10-106, C.R.S. 2017; *Strole v. Guymon*, 37 P.3d 529, 533 (Colo. App. 2001) (easements are interests in real property).

¶ 10 Words that clearly show the intention to grant an easement are adequate to demonstrate its creation, provided the language in the instrument is sufficiently definite and certain. *Hornsilver Circle,*

4

*Ltd. v. Trope*, 904 P.2d 1353, 1356 (Colo. App. 1995). As a nonpossessory interest, an easement does not require the precise description that a possessory interest does. *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 740 (Colo. 1986). The instrument instead must identify with reasonable certainty the easement created and the dominant and servient tenements. *Hornsilver*, 904 P.2d at 1356. No particular words are necessary to grant an easement, and a lack of specificity in describing an easement's location will ordinarily not invalidate it. *Stevens v. Mannix*, 77 P.3d 931, 932 (Colo. App. 2003) (citing *Isenberg v. Woitchek*, 144 Colo. 394, 400, 356 P.2d 904, 907 (1960)).

¶ 11     The general rule is that vagueness in describing the easement "does not go to the existence or validity of an easement," but "an extreme case of vagueness could result in a holding that no easement was granted." *Isenberg*, 144 Colo. at 399, 356 P.2d at 907; *see Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cty. Comm'rs*, 80 P.3d 871, 879-80 (Colo. App. 2003) (no easement was created where a conveyance was "subject to" a right-of-way not previously existing and possibly including land not owned by the grantor, and concluding "[w]e cannot determine from the face of the

5

1921 deed that the lumber company intended to grant the road easement"). "To determine whether an easement has been expressly granted — and, if it has, the extent of such easement — we look first to the deed or other conveyance instrument, construing it to ascertain the parties' intent." *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 48 (citing *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo. 1998)). Ascertaining the parties' intent is "[o]ur paramount concern." *Lazy Dog Ranch*, 965 P.2d at 1235.

### B.     *The Easement's Description in the Commissioners Deed*

¶ 12     The Commissioners deed conveyed to Lakewood a "permanent public easement for ingress and egress *over the property described in Exhibit 'A'* attached hereto." (Emphasis added.) The deed and attached Exhibit A provide a detailed metes and bounds description of a 0.362 acre parcel of land lying in the "NW 1/4 of section 34, township 4 south, range 69 west of the 6th P.M., City of Lakewood" in Jefferson County, Colorado. Thus, the Commissioners deed contains "a description of the land that is to be subjected to the easement with sufficient clarity to locate it with reasonable certainty." *Hornsilver*, 904 P.2d at 1356.

¶ 13    But the Armstrongs contend that the easement is not described because the parties agree that Exhibit A describes the entire servient estate and the easement itself is not described within the servient estate. Even assuming this is so, as noted, "a lack of specificity in describing an easement's location will ordinarily not invalidate it." *Stevens*, 77 P.3d at 932 (citing *Isenberg*, 144 Colo. at 400, 356 P.2d at 907). The parties agree that the burdened estate is sufficiently identified. So, the easement is not invalid for vagueness where the easement is not particularly identified. *Id.* at 933 ("Because these documents reasonably designate the land burdened by the easements, we conclude that the easements were not, as a matter of law, invalid because of vagueness."). "If a valid easement is granted without fixing in writing its location, the location may be determined based on the conduct of the parties." *Id.*; *see, e.g.*, *Gjovig v. Spino*, 701 P.2d 1267, 1268 (Colo. App. 1985) (looking to historical use of the easement where there was no precise description of the easement's location of ingress and egress over the servient estate); Restatement (Third) of Prop.: Servitudes § 2.7 (Am. Law Inst. 2000) ("The great majority of cases require only

that the servient estate be described. They do not require that the servitude's location within the servient estate be described.").

¶ 14    The Armstrongs also argue that if the easement and servient estate share the same legal description, as the court found, then the Commissioners deed does not describe a servient estate. The Armstrongs rely on *DRD Enterprises, LLC v. Flickema* to support this argument. 791 N.W.2d 180, 189 (S.D. 2010) (where a servient estate is not identifiable the conveyance is invalid). But, the deed in that case identified the servient estate only as "grantor's land," and the court concluded that "[t]hese two words do not suggest any point of reference by which one could identify the specific property burdened." *Id.* Further, the Armstrongs have not cited any authority, and we are not aware of any, supporting the proposition that an easement cannot encompass the entire servient estate with its boundaries being coterminous with those of the servient estate. On the contrary, an easement can encompass the entire servient estate. *See Bachman v. Hecht,* 659 F. Supp. 308, 316 (D.V.I. 1986) (an easement granted to subdivision purchasers to use beaches designated on the plan as "Plots No. 103, No. 127 and No. 186" implied that the easement covered the entire plots and was not

8

limited to beach areas), *aff'd*, 849 F.2d 599 (3d Cir. 1988) (unpublished table decision); *Jankoski v. Lake Forest Acres Homeowners, Inc.*, 968 N.Y.S.2d 240, 242-43 (N.Y. App. Div. 2013) (an easement for recreational purposes covered the entire servient estate and was not limited to lake access). So we reject this argument.

¶ 15 We conclude that the Commissioners deed describes the easement itself with reasonable certainty and is not rendered invalid by any deficiency in the easement's description.

### C. The Dominant Estate

¶ 16 The parties agree that the Commissioners deed does not expressly describe a dominant estate.

¶ 17 Requiring a sufficient description of a dominant estate is important, in part, to give a bona fide purchaser notice of the nature and extent of the easement. *See Lewitz v. Porath Family Tr.*, 36 P.3d 120, 124 (Colo. App. 2001). But in *Hornsilver*, another division of this court held that an easement was reasonably certain and valid when it provided, "in accurate detail, the size, dimensions, type of use, and location of the easement on the servient tenement, as well as the precise legal description of the servient property,"

9

even though the deed provided an "inaccurate legal description of the [dominant estate]." 904 P.2d at 1356. Even though the facts in *Hornsilver* differ from those in this case, its legal conclusions are equally applicable here.

¶ 18 The deed in question in *Hornsilver* described the dominant estate by a lot number that did not exist in the town's official recorded plat. And the Commissioners deed does not expressly describe a dominant estate. Because the deed in *Hornsilver* described a non existent dominant estate and the Commissioners deed does not describe a dominant estate at all, we perceive no reasoned basis for not applying the legal principles announced in *Hornsilver* to reach the same result in this case.

¶ 19 The parties agree that the servient estate is sufficiently described, and as we concluded above, the easement is also sufficiently described.[2] So, we conclude that the lack of an

---

[2] We recognize that in *Hornsilver*, the servient estate was separately described from the easement. But as we noted above, we are not aware of any authority prohibiting an easement and the servient estate from sharing the same legal description, and thus having coterminous boundaries.

expressly described dominant estate does not render the easement invalid. *Id.*[3]

### D.   *The Armstrongs Had Notice of the Recorded Easement*

¶ 20   To the extent the Armstrongs argue that they did not have constructive notice of the easement because the Commissioners deed does not describe the dominant estate or easement itself, we are not persuaded.

¶ 21   The easement was recorded in the Jefferson County Clerk and Recorder's Office pursuant to section 38-35-109(1), C.R.S. 2017, over twenty-five years prior to the Armstrongs' purchase of the property.  We have concluded above that the easement is described with reasonable certainty and is valid.  So, the Armstrongs had constructive notice of the easement.  *Bolinger v. Neal*, 259 P.3d 1259, 1270 (Colo. App. 2010) ("As a matter of law, a person who

---

[3] We note that *Hornsilver* is consistent with the general rule that "it is a sound conveyancing practice to identify the dominant estate in a deed, but generally this is not essential to the creation of an easement appurtenant."  Jon W. Bruce & James W. Ely, *The Law of Easements and Licenses in Land* § 2:3, Westlaw (database updated September 2017); *see, e.g.*, *Garza v. Grayson*, 467 P.2d 960, 962 (Or. 1970); *Lozier v. Blattland Invs., LLC*, 100 P.3d 380, 385 (Wyo. 2004).

acquires an interest in real property is on constructive notice of all prior filings concerning that property.").

### IV.  The Court Properly Reviewed Extrinsic Evidence to Determine the Commissioners Deed's Validity

¶ 22    The Armstrongs contend that the court impermissibly looked to extrinsic evidence to interpret the Commissioners deed. Specifically, the Armstrongs assert that because the deed failed to describe the easement or dominant estate, extrinsic evidence, including the parties' intentions, was not admissible to alter or control the deed's plain terms, so the Commissioners deed is invalid and unenforceable.  Again, we are not persuaded.

¶ 23    Extrinsic evidence may be considered to determine whether the description of an easement in a deed is reasonably certain or instead is invalid for vagueness.  *See, e.g., Isenberg*, 144 Colo. at 400, 356 P.2d at 907 ("[The] lack of specific description does not affect the validity of the easements, particularly where the conduct of parties has over a period of time located it."); *Stevens*, 77 P.3d at 933 ("Because [the site plan] documents reasonably designate the land burdened by the easements, we conclude that the easements were not, as a matter of law, invalid because of vagueness.").

¶ 24    And again, lack of a description of the dominant estate is not fatal to the Commissioners deed's validity. *See Hornsilver*, 904 P.2d at 1356 ("We find most persuasive those cases which hold that an easement is valid provided the servient tenement is accurately identified."). So the court may properly review extrinsic evidence to determine whether an easement is identified with reasonable certainty and, therefore, valid.

¶ 25    The district court found that the parties agreed that the legal description in Exhibit A to the Commissioners deed sufficiently described the servient estate. It also concluded that "the failure to describe the dominant estate is not a fatal flaw, as long as the size and location of the easement can be ascertained." And it noted that a letter and accompanying drawing sent by a property manager for Lakewood to the grantor in the Mackey deed, dated before the Mackey deed's execution, shows that Lakewood intended to use the easement to build a road to carry equipment and material to complete the development of the Bear Creek Greenbelt. Once the work was completed, Lakewood intended the road to remain and to provide permanent maintenance and emergency vehicle access to the greenbelt. Based on this undisputed evidence, the court found

that "[Lakewood] intended to use the easement to build a road across the property and needed the entire space for the purposes of building that road." The court further summarized its findings:

> (1) the parties intended to create an express easement,
>
> (2) the easement is not deficient because of the vagueness of the instrument,
>
> (3) the easement originally agreed on encompassed the entire area described in the Mackey deed and transferred to the [Armstrongs] in the Commissioners deed.

¶ 26 The court did not err in considering this extrinsic evidence to determine that the easement's description encompassed the entire servient estate, and, thus, for the purposes of determining the easement's validity, it was not deficient because of vagueness. *See Isenberg*, 144 Colo. at 400, 356 P.2d at 907; *Stevens*, 77 P.3d at 933. And because a dominant estate is necessary for a valid easement appurtenant, *see Lewitz*, 36 P.3d at 122, the court did not err in considering this extrinsic evidence to determine what, if any, dominant estate the easement served. *See, e.g., Hornsilver*, 904 P.2d at 1356 (an easement was not void where the deed described a non-existent "Lot B" in the town's recorded plat but the

14

dominant estate was simply inaccurately described).  The court found that the easement served the Bear Creek Greenbelt as a dominant estate.  Another division of this court has concluded that a trial court properly considered extrinsic evidence in a similar context to determine that an easement was valid even though no dominant estate was described.  *Bolinger*, 259 P.3d at 1265 (rejecting the argument that an easement was not created because under a common development plan, "the dominant estate need not be specifically described").

¶ 27    The Armstrongs also argue that the court erred in considering extrinsic evidence to determine the location and extent of the dominant estate because Jefferson County did not own any adjacent property when the Mackey deed conveyed the easement to it.  We reject this argument because, as we explain in Part VI below, Jefferson County had authority to purchase the Mackey easement for Lakewood's benefit.

¶ 28    Finally, we do not address the Armstrongs' argument, raised for the first time in their reply brief, that the court also improperly considered the undisputed extrinsic evidence to resolve any ambiguities in the deed.  *See Colo. Korean Ass'n v. Korean Senior*

*Ass'n of Colo.*, 151 P.3d 626, 629 (Colo. App. 2006) ("[W]e do not address issues raised for the first time in a reply brief.").

### V. The Commissioners Deed's Reverter Clause Has Not Been Triggered Because Its Purpose Still Applies

¶ 29     The Armstrongs contend that the court erred in enforcing the Commissioners deed because the reverter clause in the deed had been triggered, so the deed expired. We disagree.

¶ 30     Where a deed's language provides that property is conveyed so long as it is used for a specific purpose and no longer, the conveyance creates a fee simple determinable with the possibility of reverter. *Sch. Dist. No. Six v. Russell*, 156 Colo. 75, 81, 396 P.2d 929, 932 (1964). This property interest lasts an indefinite period and terminates if a specified event occurs, and the subject property then automatically reverts to the grantor of the interest. *Id.* at 80, 396 P.2d at 931.

¶ 31     The Commissioners deed contains a reverter clause stating that the easement granted from Jefferson County to Lakewood lasts "for so long as the following described property is used exclusively for public open space, park and recreational purposes and no longer . . . ."

¶ 32    Lakewood produced undisputed evidence showing that the dominant estate served by the easement has been continuously used exclusively for open space, park, and recreational purposes, namely the Bear Creek Greenbelt, since Lakewood obtained the easement.

¶ 33    The Armstrongs' argument that the reverter clause was triggered because the dominant estate is zoned for commercial use does not create a material factual dispute as to the easement's *use*, and, therefore, is not relevant.  The deed requires the easement be "used exclusively for public open space, park and recreational purposes."  The easement's use is the determinative factor for triggering the reverter clause, not the zoning of the land benefited by it.  *See Barnes v. Winford*, 833 P.2d 756, 757 (Colo. App. 1991) ("[The grantor], therefore, retained a possibility of reverter interest in the land occupied by the right-of-way which would vest automatically when and if the [r]ailroad ceased to *use* the right-of-way for 'railway purposes.'") (emphasis added).

¶ 34    The Armstrongs also assert that the Bear Creek Greenbelt is almost a mile away from their property.  But this evidence, even if considered in a light most favorable to the Armstrongs, does not

17

create a material factual dispute about the easement's use. The Armstrongs provided no evidence rebutting Lakewood's evidence that the dominant estate served by the easement has been continuously used for open space, park, and recreational purposes. And, as the Armstrongs concede on appeal, "[t]he facts relating to this issue on appeal are undisputed." But even if this assertion is accurate, benefited and burdened lands are not required to be adjacent to one another. *Wagner v. Fairlamb*, 151 Colo. 481, 487, 379 P.2d 165, 169 (1963) ("For the general and modern rule, which we approve, is that a right-of-way may be appurtenant to land even when the servient tenement is not completely adjacent to the dominant.").

¶ 35 We conclude that a reversion was not triggered by the dominant estate's zoning classification and the easement has not reverted to Jefferson County.[4]

_____

[4] The Mackey deed to Jefferson County does not contain a reverter clause, so if the Commissioners deed's reversion was triggered, the easement would revert to Jefferson County.

### VI. *Jefferson County Had Authority to Purchase the Mackey Easement*

¶ 36    The Armstrongs contend that the Commissioners deed is void because Jefferson County did not have the authority to purchase the easement for use by Lakewood.  We disagree.

### A.    *Applicable Law*

¶ 37    A county may purchase real estate for the "use of the county." § 30-11-101(1)(b), C.R.S. 2017.  But counties do "not have blanket authority to deal in real estate."  Farnik v. Bd. of Cty. Comm'rs, 139 Colo. 481, 491, 341 P.2d 467, 473 (1959).  While counties "possess only such powers as are expressly conferred on them either by the Constitution or statutes," this includes "such implied powers as are reasonably necessary to the proper execution of those expressly conferred."  *Id.*  Counties may not acquire real property for speculation or investment, nor can they retain property lawfully acquired for use by the county when the reason for the county's use no longer exists.  *Id.* at 492, 341 P.2d at 473.

### B.    *Analysis*

¶ 38    In addition to the powers enumerated above, Jefferson County has the authority "[t]o exercise such other and further powers as

may be especially conferred by law." § 30-11-101(1)(e). One such power is to "acquire, sell, own, exchange, and operate public recreation facilities, open space and parklands, [and] playgrounds . . . ; acquire, equip, and maintain land, buildings, or other recreational facilities either within or without the corporate limits of . . . [the] county; and expend funds therefor and for all purposes connected therewith." § 29-7-101(1), C.R.S. 2017. Similarly, Jefferson County may "acquire . . . any public project, which public project may be located within or without or partly within and partly without the territorial limits of [Jefferson County]." § 30-20-302, C.R.S. 2017.

¶ 39    A public project includes "any lands . . . suitable for and intended for use as public property for public purposes or suitable for and intended for use in the promotion of . . . public welfare, or the conservation of natural resources, including the planning of any such lands . . . ." § 30-20-301(2), C.R.S. 2017; *see also Garel v. Bd. of Cty. Comm'rs*, 167 Colo. 351, 357, 447 P.2d 209, 211 (1968) ("[T]he sewer system as contemplated to be constructed by the Board in Summit County is within the power conferred in the act

20

and well within the definition of 'public project . . . .'" (quoting section 30-20-301's predecessor, section 39-19-1, C.R.S. 1963)).

¶ 40     The Armstrongs have not cited any authority, and we are not aware of any, that requires Jefferson County to own property adjacent to property being acquired for recreational purposes or a public project before such property is acquired.  And generally, "the creator of an easement need not own the dominant estate."  *Lewitz*, 36 P.3d at 123.

¶ 41     Lakewood presented undisputed evidence that Jefferson County purchased the Mackey easement to further a plan to operate parks and open space in Jefferson County.  Specifically, before Jefferson County acquired the easement, Lakewood resolved to purchase the easement to provide access to the Bear Creek Greenbelt, and to use its share of Jefferson County's available "Open Space Funds" to do so.  The Mackey easement was then acquired using these funds contributed by both Lakewood and Jefferson County.

¶ 42     Jefferson County expended its funds for the purpose of providing a public easement for ingress and egress to and from the Bear Creek Greenbelt.  The Commissioners deed requires Lakewood

21

to use the easement exclusively for public open space, park, and recreational purposes. The Bear Creek Greenbelt is used as a public open space and parkland.

¶ 43 We conclude that Jefferson County had the authority to purchase an easement for access to a public park or open space owned by Lakewood under its implied powers to promote public projects or public open space and parkland. *See generally Adams Cty. Golf, Inc. v. Colo. Dep't of Revenue*, 199 Colo. 423, 426, 610 P.2d 97, 99 (1980) (concluding that counties have implied power to sell beer given the express power to own or operate public recreational facilities).

## VII. Conclusion

¶ 44 We affirm the district court's order granting partial summary judgment for Lakewood and denying the Armstrongs' motion for summary judgment.

JUDGE DAILEY and JUDGE WELLING concur.