Mr. Chief Justice Moore
delivered the opinion of the Court.
*559 We will refer to the Glendale Water & Sanitation District as the District; to Denver Mortar and Materials Company as Mortar Company; and to the City and County of Denver as the City.
In August 1960, in the district court of Arapahoe county, civil action No. 15534 was filed by the City against the District and another defendant known as C.&H. Contractors. The last named defendant was dismissed from the action and is not now before this court. Mortar Company, now a plaintiff in error, as well as others hereinafter mentioned who are not parties in this court were brought into the case as third party defendants. The District was organized under the provisions of C.R.S. 1963, Chapter 89, and at all times pertinent to this controversy had the powers and duties as provided in C.R.S. 1963, 89-5-13.
The City alleged that it was the owner of a certain tract of land in Arapahoe county which was 400 feet wide with 200 feet on each side of a center line of Cherry Creek, as established by an ordinance adopted in 1935. It was further alleged that in August 1960 the District took possession of a strip of land 20 feet in width crossing the 400 foot wide property belonging to the City, and was about to lay a sanitary sewer pipe across the City property. The prayer of the complaint was for injunctive relief and actual and punitive damages.
The District filed an answer in which it denied the ownership of the property claimed by the City; admitted that the District had installed a water and sewer line across the disputed property; denied that the City was entitled to damages; and affirmatively alleged that under the provisions of C.R.S. 1963, 89-5, it had legal authority to do all things which had been done by it.
The District also filed a motion in which it was asserted that the property claimed by the City was deeded to the City by Percival and Edward T. Young, Jr., in 1935; that any rights remaining in those grantors had *560 descended to the heirs of Percival Young (all of whom were named). The motion requested that these persons, to whom we refer as- the Youngs, be made third party defendants. This motion was granted and the third party complaint of the District against the Youngs and Denver Mortar was filed.
Denver Mortar filed its answer to .the third party complaint in which it alleged that it was the owner of the property claimed by the City and that the City had no title thereto. Denver Mortar alleged that the City claimed an interest in the property. by virtue of an agreement' and deed (hereinafter mentioned) but that by the terms of that deed the property had “reverted” to Denver Mortar; and that in addition thereto it had acquired title by adverse user.
A Second Amended Answer was filed by the District which contained a counterclaim against the City in which it sought condemnation of any property belonging to the City necessary for a right-of-way across Cherry Creek for the water and sewer lines of the District. We summarize the defenses of the District as alleged in the Second Amended Answer as follows: The action of the City is barred by C.R.S, 1963, 118-7, in that the District and- its predecessors have acquired title by adverse possession; that the District was legally entitled to construct its sewer and water lines across the public highways and streams; that the action of the City was brought for the purpose of requiring the town of Glendale to annex itself to the city of Denver; that the District had acquired all interest remaining in the Youngs following the original conveyance, by their predecessors, to the City in and to the disputed land; and that the District is vested with the power of. eminent domain and if for any reason its title is defective the action should, be treated as an action for inverse condemnation.
Counsel for the District made the following statement at the pre-trial conference:
“The District claims that if the Court should determine *561 that it does not have the right to construct its lines as now located, the District does have the power of eminent domain and the right to condemn the rights of way, and that this action -should be treated as an inverse condemnation proceeding. - The District claims that under such circumstances the Court should determine the amount, if any, of compensation to be paid- to Denver, or should stay any judgment in ejectment ■ to enable the parties to attempt to agree • on the amount of compensation or failing agreement the District be given reasonable time to commence condemnation proceedings.”
The claimed title of the City to the property in dispute is based on two separate deeds — one from Youngs in August 1935, and the other from Denver Mortar in October 1935. The Youngs’ deed purported to convey an area lying south of the center line of Cherry Creek. Bordering the south boundary of the stream there was a roadway known as Cherry Creek Drive, and south of the roadway a strip of land approximately 20 feet in width which was enclosed by a fence, ■ all of which was included in the land described in'the Young deed.
The Denver Mortar deed to the City described property lying north of that' conveyed by' the Young deed. Most of this ground was also north of the center line of Cherry Creek. This deed contained lengthy verbiage purporting to reserve to Denver Mortar easements in and upon the land for purposes connected with the business operations of the grantor, and also imposing upon the City the obligation to construct “piling” and a “river embankment” as “contemplated,” together with an undetermined number of “culverts, waterways and gates, pipes and pipe lines that are to be constructed and maintained in and through the embankment and piling to be constructed by said grantee as hereinafter provided.” The only matter “hereinafter provided” by the reservation clauses of the deed is that whatever was “contemplated” should be performed within two years.
*562 It is the position of Denver Mortar that at some time after the expiration of two years the title to the land conveyed to the City automatically became reinvested in Denver Mortar on the theory that the deed of Denver Mortar to- the City created a fee simple determinable. The trial court held otherwise and ruled that the deed “* * * created a fee simple estate subject to a condition subsequent.” The trial court further found, inter alia, that “the power of termination was not exercised by any of the grantors.” In so finding the court committed no error. The differences between a “fee simple determinable” and an estate upon condition subsequent, giving rise to a right of entry for breach of the condition, are discussed and clarified in School District v. Russell, 156 Colo. 75, 396 P.2d 929.
Without lengthening this opinion with a recitation of all the language contained in the deed, it is sufficient to say that the “reservations” relied on by Denver Mortar created an estate upon “conditions subsequent.” There being no automatic “fee simple determinable,” action on the part of Denver Mortar based on its claim of conditions broken was essential. There was no such action. The claim of Denver Mortar that it had acquired title by adverse possession has no merit.
Denver Mortar has all the rights originally bargained for in the transaction with the City when the deed was executed and delivered, unless the applicable statute of limitations has been permitted to run which might prevent the assertion of the right to re-enter for condition broken.
With reference to the issues framed by the pleadings involving the Youngs, the trial court found, inter alia, that:
“* * * a fence remained thereon directly adjacent to the right of way of Cherry Creek Drive, the Young family retained possession of the property south of the fence, and this continued for more than eighteen years.”
The court further decreed that title to the area south *563 of the fence adjoining the Cherry Creek Drive “became vested in the Young family by adverse possession.” Thus the Youngs enjoyed favorable judgment upon their claim. They were not designated as parties to the action in this court, and are now entitled to enjoy the full benefit of the judgment entered by the trial court. Any party adversely affected by that judgment necessarily had the responsibility of perfecting appellate proceedings against them. No party did so and the judgment as to the Youngs is final.
As to the asserted rights of the City, the trial court held, inter alia, that:
“Plaintiff City and County of Denver showed title in itself to the 400 foot strip, except for that portion which lies south of the former fence which was maintained by the grantors, the Youngs, for a period in excess of eighteen years. The testimony did not show establishment of adverse possession by Denver Mortar and Materials Company by a preponderance of the evidence. Glendale Water and Sanitation District does have a right to exercise eminent domain and may proceed against the plaintiff as to those portions of land other than the part along the south side of the right-of-way of Cherry Creek Drive that the Court has ruled became vested in the Young family by adverse possession. The defendant is entitled to place its line through the street subject, to the provisions of 89-5-13 (10) and (11) C.R.S. 1963.”
In so holding the trial court did not err.
The judgment is affirmed insofar as it determines the rights of the parties in and to the disputed land. However, this action should be treated as one for inverse condemnation. We direct that from and after the date upon which remittitur issues in this cause a period of six weeks be allowed within which the District and the City may negotiate a settlement of the claim of the City for compensation for the property taken by the District. If no settlement is reached within that time *564 further proceedings shall be conducted in the action as provided by law in condemnation cases.
Mr. Justice McWilliams and Mr. Justice Kelley not participating.