## No. 79SA171

**Adams County Golf, Inc. v. Colorado Department of Revenue and Steven V. Berson, Deputy Director, thereof**

(610 P.2d 97)

Decided April 21, 1980. Rehearing denied May 12, 1980.

S. Morris Lubow, John E. Bush, Jr., for plaintiff-appellee.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary Mullarkey, Solicitor General, James R. Willis, Special Assistant Attorney General, for defendants-appellants.

*En Banc.*

CHIEF JUSTICE HODGES delivered the opinion of the Court.

Appellant, Adams County Golf, Inc. (Adams, Inc.), applied to the Board of County Commissioners of Adams County for the transfer of a 3.2% fermented malt beverage license (3.2% license) from Golf Professionals, Inc., dba Adams County Golf Club. The Board of County Commissioners approved the transfer. Adams, Inc. then filed a transfer application with the Colorado Department of Revenue (Department). After a hearing, the application was denied. Adams, Inc. challenged this denial of its transfer application in the district court which reversed and remanded the cause to the Department with directions to transfer the 3.2% license to Adams, Inc. The Department appealed to the court of appeals and this court accepted transfer of this appeal pursuant to section 13-4-109, C.R.S. 1973. The judgment of the district court is affirmed.

Adams, Inc. is a Colorado non-profit corporation. The directors and officers are all employees of Adams County. One director/officer is the Adams County Deputy Clerk. The Adams County Attorney incorporated Adams, Inc. All profits are to be transferred to Adams County at least once a year in lieu of rent. In return, Adams County is to provide rental space, utilities, and personnel.

The Department denied Adams, Inc.'s transfer application on the ground that Adams, Inc. is the alter ego of Adams County, and that granting a 3.2% license to a local licensing authority would violate the dual control system of regulating beer outlets as established by the Colorado Beer Code, section 12-46-101 et seq., C.R.S. 1973 (1978 Repl. Vol. 5). The district court held the Department acted arbitrarily and capriciously in denying the transfer application. We agree.

The Department does not assert that there are any express statutory restrictions in the Colorado Beer Code which would preclude Adams, Inc.

from obtaining a 3.2% license, nor do we find any such prohibitions. The Department contends, however, that there is an implicit statutory prohibition against Adams, Inc.'s obtaining a 3.2% license. It asserts as a basis for this contention that the Board of County Commissioners of Adams County, which is the local licensing authority under the Colorado Beer Code, has significant responsibilities as a part of a "dual control system" adopted by the Colorado legislature. The Department contends that since Adams, Inc. is the alter ego of Adams County this dual regulatory scheme has been abrogated. The gist of the Department's contention is that a regulatory body cannot responsibly regulate itself, and therefore Adams, Inc. should not be granted a 3.2% license.

 The Department's conclusion that Adams, Inc. is the alter ego[1] of the Board of County Commissioners of Adams County is premised on the Department's finding that "there is a substantial identity of interest between the Applicant and Adams County. The Applicant is a creation of, and is wholly controlled by Adams County." While it is true that the initial directors and officers of Adams, Inc. are employed by the county, there is not evidence that the directors or officers have been in fact controlled or dominated by the Board of County Commissioners.

Under the facts of this case there is no showing that the Board of County Commissioners of Adams County has abused or is in a position to abuse its regulatory responsibilities. Additionally we note that a variety of statutory safeguards are provided. A state license must always be obtained, and all of the requirements of the Colorado Beer Code must therefore be satisfied. In addition, there are many entities required to regulate and enforce every provision of the Colorado Beer Code. "[A]ll sheriffs, police, peace officers, and city and county officials shall enforce every provision of the [Colorado Beer Code] within their jurisdiction." Section 12-46-106(5), C.R.S. 1973 (1978 Repl. Vol. 5). The state licensing officials are also obligated to enforce these provisions. *See* sections 12-46-104, 105, and 116, C.R.S. 1973 (1978 Repl. Vol. 5).

The Department also argues that counties have no statutory power to sell beer. We disagree.

 Counties are given power to own or operate public recreational facilities, e.g., a golf course. Section 29-7-101, C.R.S. 1973 (1977 Repl. Vol. 12). It is common knowledge that a golf clubhouse is a necessary incident to operating a golf course, and that it is customary for food and

---

[1] We characterize the finding that Adams, Inc. is the alter ego of Adams County as a misapplication of the corporate doctrine having no relevance here. This corporate theory is applicable only after a subservient corporation violates an obligation or commits a dishonest or unjust act at the direction of a dominant corporation. *See National Bond Finance Co. v. General Motors Corp.*, 238 F. Supp. 248 (W.D. Mo. 1964), and *Fink v. Montgomery Elevator Co.*, 161 Colo. 342, 421 P.2d 735 (1966).

beverages including beer to be sold at a clubhouse. A county, and its commissioners, possess such incidental implied powers as are reasonably necessary to carry out powers expressly conferred. *Board of County Commissioners v. City and County of Denver,* 194 Colo. 252, 571 P.2d 1094 (1977).

■ We conclude, therefore, that a county may lawfully issue a 3.2% license to a nonprofit corporation which is a licensee-concessionaire of a portion of the golf clubhouse facilities in order to provide such service to the patrons of the golf course and to the general public.

Since there is no statutory framework within which Adams, Inc.'s transfer application can properly be denied, we agree with the district court's conclusion that the Department acted capriciously and arbitrarily in denying the application. The district court properly reversed and remanded the cause to the Department with directions to grant the transfer application. *See* sections 12-46-106(7)(a) and 118, C.R.S. 1973 (1978 Repl. Vol. 5). *See generally* section 24-4-106(7), C.R.S. 1973.

The judgment is affirmed.

JUSTICE DUBOFSKY and JUSTICE LOHR dissent.

JUSTICE LOHR dissenting:

Adams County Golf, Inc. (Adams, Inc.) is a creation of, and is wholly controlled by, Adams County.[1] The majority holds that the executive director of the Department of Revenue (Department), as state licensing authority under the Colorado Beer Code,[2] is authorized to issue a retail license for sale of fermented malt beverages (3.2% license) to Adams, Inc. Indeed, the majority holds that the Department's refusal to issue such a license solely because of the relationship between Adams, Inc. and Adams County is arbitrary and capricious. I respectfully dissent.

In order to make retail sales of fermented malt beverages in Colorado, it is necessary to obtain a 3.2% license from the Department and from the local licensing authority. Sections 12-46-102, -105, -117, C.R.S. 1973 (1978 Repl. Vol. 5). In this case the local licensing authority is the board of county commissioners of Adams County. Section 12-46-103(4), C.R.S. 1973 (1978 Repl. Vol. 5). A licensee may be "any person, partnership, association, organization, or corporation" meeting certain qualifications and conditions. Section 12-46-108, C.R.S. 1973 (1978 Repl. Vol. 5). The Colorado Beer Code does not address specifically the question

---

[1] This was a finding of fact by the officer of the Colorado Department of Revenue and State Licensing Authority who conducted the hearing on Adams, Inc.'s application for a retail license for sale of fermented malt beverages. A review of the record reflects that the finding is supported by admissions made by applicant's attorney during the course of the hearing.

[2] Sections 12-46-101 to 118, C.R.S. 1973 (1978 Repl. Vol. 5).

whether a 3.2% license can be issued to a local licensing authority or to an organization controlled by such authority.[3]

A review of the many duties imposed by the Colorado Beer Code upon a local licensing authority illuminates the issues involved in determining whether Adams, Inc. can be granted a 3.2% license. In considering an application for a license, the local licensing authority must determine the good character and reputation of the applicant. Section 12-46-108(1)(b), C.R.S. 1973 (1978 Repl. Vol. 5). It must consider "the reasonable requirements of the neighborhood and the desires of the inhabitants." Section 12-46-108(2), C.R.S. 1973 (1978 Repl. Vol. 5). It may suspend or revoke a 3.2% license for cause. Section 12-46-107, C.R.S. 1973 (1978 Repl. Vol. 5). It may make reasonable rules and regulations with respect to sale of fermented malt beverages. Section 12-46-106(10), C.R.S. 1973 (1978 Repl. Vol. 5). County officials must enforce every provision of the Colorado Beer Code within their jurisdiction. Section 12-46-106(5), C.R.S. 1973 (1978 Repl. Vol. 5).[4] The local licensing authority may be called upon to act on applications for other 3.2% licenses in the neighborhood and in doing so must consider whether the reasonable requirements of the neighborhood are being met. Section 12-46-108(2), C.R.S. 1973 (1978 Repl. Vol. 5). The seriousness of the conflicts of interest which are created if the local licensing authority may also be a licensee needs no further elaboration.

The local licensing authority is vested with broad discretion. *See City of Manitou Springs v. Walk,* 149 Colo. 43, 367 P.2d 744 (1961). Judicial review of any decision of a local licensing authority denying a license is limited to determination of whether the refusal was arbitrary and without good cause. Section 12-46-118, C.R.S. 1973 (1978 Repl. Vol. 5).

It is presumed that the legislature in enacting a statute intended a just and reasonable result. Section 2-4-201(1)(c), C.R.S. 1973. If a statute is ambiguous, the court, in determining the legislative intent, may consider the object sought to be attained and the consequences of a particular construction, among other things. Section 2-4-203, C.R.S. 1973. Here the question, posed in starkest form, is whether the county can grant a 3.2% license to itself.[5] We cannot blind ourselves to the fact that the county is the proposed licensee simply because the county has used a non-profit cor-

---

[3] The powers of a county are exercised by its board of county commissioners. Section 30-11-103, C.R.S. 1973 (now in 1977 Repl. Vol. 12).

[4] This duty is shared with sheriffs, police, and peace officers. This in no way lessens the independent duty of the county officials.

[5] A license must be obtained from the local licensing authority and from the Department. If a county cannot be granted a license by the former, it follows that it cannot be granted a license by the latter. No useful purpose would be served by any other conclusion.

portion wholly controlled by itself.[6] The statute does not specify whether a county can be a licensee, and is ambiguous in that respect.[7] In light of the conflicting interest which will exist if the county could be a licensee; the potential adverse effects which such conflicting interest could have on the administration of the Colorado Beer Code and on public confidence in impartial administration; and the principles of statutory construction referred to above, I would hold that Adams, Inc., a corporation wholly controlled by Adams County, is not an authorized licensee under section 12-46-108(1), C.R.S. 1973 (1978 Repl. Vol. 5), and would reverse the judgment of the district court.

I am authorized to say that Justice Dubofsky joins me in this dissent.

---

[6] Adams County has engaged in no subterfuge in utilizing Adams, Inc. in this matter. The county's attorney candidly acknowledged during the hearing that Adams, Inc. is controlled by the county. It is the county's contention that such activity is fully consistent with the Colorado Beer Code.

[7] A county is "a body politic and corporate." Section 30-11-103, C.R.S. 1973 (now in 1977 Repl. Vol. 12). It is by no means clear that this is the type of "corporation" referred to in section 12-46-108, C.R.S. 1973 (1978 Repl. Vol. 12); *i.e.,* a corporation "incorporated pursuant to the laws of the state of Colorado or duly qualified to do business in the state of Colorado."