ESTES PARK CHAMBER OF COMMERCE, a Colorado nonprofit corporation; Norm and Dee Pritchard, individually, d/b/a Black Dog Inn, a Colorado sole proprietorship; and Baldpate Inn, Ltd., Plaintiffs–Appellants,

v.

TOWN OF ESTES PARK, Colorado, a Colorado municipal corporation, Defendant–Appellee.

No. 06CA0953.

Colorado Court of Appeals, Div. A.

July 12, 2007.

Certiorari Denied April 14, 2008.

Hayes, Phillips, Hoffman & Carberry, P.C., John E. Hayes, Hilary Mogue Graham, Denver, Colorado, for Plaintiffs–Appellants.

Windholz & Associates, James A. Windholz, Boulder, Colorado; Gregory A. White, Loveland, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

Plaintiffs, Estes Park Chamber of Commerce, Norm and Dee Pritchard (doing business as Black Dog Inn), and Baldpate Inn, Ltd., brought a declaratory judgment action against defendant, Town of Estes Park, challenging, inter alia, the Town's authority to conduct tourism-related marketing and advertising. On this claim, the trial court granted summary judgment in favor of the Town, and, on appeal, plaintiffs contend that this judgment was error. We reverse and remand for further proceedings.

Estes Park is a statutory town and has long been a tourist destination. According to the Town, it has historically been involved in tourism-related advertising, marketing, sales, special events promotion and planning, and providing special events and conference service activities. The Town established three departments to carry out these functions: the Advertising Department, the Special Events Department, and the Conference Services Department.

Since the early 1950s, the Town also contracted with the Estes Park Chamber of Commerce, a private nonprofit corporation, to staff and operate the Town Visitor Center and, according to the Chamber, to provide marketing, advertising, and promotional activities associated with the commercial enterprise. The Town paid the Chamber $4,000 per month to answer the Town's 1–800 informational phone number, and also permitted the Chamber to lease the Visitor Center for an annual rent of $1.

In 2003, the Town combined and expanded the services provided by its three tourist-focused departments by creating a single new department, the Business Development Department. The Town later changed the name of the Business Development Department to the Estes Park Convention and Visitors Bureau (CVB) and also created a Marketing Advisory Board to implement the Town's new marketing strategy. In the same time period, the Town decided not to renew its contracts with the Chamber (including the Chamber's lease of the Visitor Center), and instead decided that the CVB would take over operations of the Visitor Center, which it did in late 2004.

Shortly before the Chamber was forced to vacate the Visitor Center, the Chamber and several business owners brought this action against the Town, seeking declaratory judgments determining that: (1) the most recent lease between the Chamber and the Town did not extinguish a previous, longer lease;

(2) the Town's new and expanded tourism-promotion activities exceeded its statutory grant of authority to appropriate moneys for the purpose of "advertising" the Town; and (3) the Town's collection of Tax Equivalency Fees from "out-of-town" members was the functional equivalent of a tax and therefore invalid. They also sought a permanent injunction to prevent the Town from forcing the Chamber to vacate the Visitor Center.

The trial court resolved issues involving the Chamber's lease and tenancy in favor of the Town. The parties then filed cross-motions for summary judgment on the remaining issues. The trial court granted summary judgment in favor of the Town on the issue of the formation and operation of the CVB, but ruled in plaintiffs' favor on the Tax Equivalency Fees issue. Regarding the CVB, the court determined that the Town's funding of "advertising and marketing" was authorized by § 31–15–901(1)(b), C.R.S.2006, and determined that the Town did so in a properly administrative manner. Only plaintiffs appeal.

### I. Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613 (Colo.1999). We review a grant of summary judgment de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 298–99 (Colo.2003).

### II. In Addition to "Advertising," Does § 31–15–901(1)(b) Authorize the Town to Conduct "Marketing" Activities?

▮ Plaintiffs contend that the trial court erred in determining that the Town's broad-based marketing and referral enterprises, described by the court as the Town's "advertising and marketing," were authorized by § 31–15–901(1)(b), the provision that allows statutory towns to appropriate moneys for "advertising." We agree with plaintiffs that, as a statutory town, the Town was not authorized to appropriate monies for any activities that were not "advertising" or "advertising-related."

▮ Statutory municipalities possess only those powers that are expressly conferred by statute or exist by necessary implication. *City of Sheridan v. City of Englewood,* 199 Colo. 348, 350, 609 P.2d 108, 109 (1980). In this way, statutory municipalities are unlike home rule municipalities, which have plenary legislative authority over local and municipal matters as guaranteed by article XX of the Colorado Constitution. *See City of Aurora v. Bogue,* 176 Colo. 198, 200, 489 P.2d 1295, 1296 (1971). Thus, statutes granting such powers must be strictly construed, and any doubt as to a statutory municipality's power must be resolved against it. *City of Aurora v. Bogue, supra,* 176 Colo. at 200–01, 489 P.2d at 1296.

Section 31–15–901(1)(b) provides, in relevant part: "The governing body of each municipality has the power ... [t]o appropriate moneys *for the purpose of advertising* the business, social, and educational advantages, the natural resources, and the scenic attractions of such municipality" (emphasis added).

The word, "advertising," as used in § 31–15–901(1)(b), is not specifically defined in the statute. However, its common definition is the nonpersonal communication of information to the public to promote a product, service, or idea using a form of media. *See* William F. Arens & Courtland Bovee, *Contemporary Advertising* 6 (5th ed.1994) ("advertising" is the "nonpersonal communication of information usually paid for and usually persuasive in nature, about products, services, or ideas by identified sponsors through various media"); *see also Merriam–Webster's Collegiate Dictionary* 19 (11th ed.2004) (advertising is "the action of calling something to the attention of the public especially by paid announcements"); *Black's Law Dictionary* 59 (8th ed.2004) (advertising is "1. The action of drawing the public's attention to something to promote its sale. 2. The business of producing and circulating advertisements.").

"Marketing," however, is a broader term. It is generally described as the process of planning, promotion, and distribution of products or services to meet customers' needs. *See* Boone & Kurtz, *Contemporary*

*Marketing Wired* 6 (Dryden Press 1998) ("Marketing is the process of planning and executing the conception, pricing, promotion, and distribution of ideas, goods, services, organizations, and events to create and maintain relationships that will satisfy individual and organizational objectives."); *see also Merriam–Webster's, supra,* at 760 (marketing is "the process or technique of promoting, selling, and distributing a product or service"); *Black's, supra,* at 990 (marketing is "1. The act or process of promoting and selling, leasing, or licensing products or services. 2. The part of a business concerned with meeting customers' needs.").

From these definitions, it follows that all advertising—the nonpersonal communication of information to the public to promote a product, service, or idea using a form of media—falls within the process of promotion and, therefore, is a subset of marketing. But, conversely, not all marketing is advertising. Promoting a product or service is not limited to simply the nonpersonal communication of information to the public.

The Town points out, however, that even if they are discrete functions, advertising and marketing are not wholly unrelated. Accordingly, the Town suggests that the General Assembly simply used imprecise terminology, intending to encompass marketing functions when it empowered statutory towns to use taxpayer monies to fund advertising.

However, there are more than twenty Colorado statutes that contain both the word "advertising" and the word "marketing"— several of them predating § 31–15–901(1)(b)—and none of the statutes use the terms used interchangeably. *See* § 24–49.7–104, C.R.S.2006 (granting board of Colorado Tourism Office power to gather information on tourism marketing effort and to expend moneys on advertising); § 30–11–107.5(1), C.R.S.2006 (granting counties power to levy lodging tax to fund advertising and marketing of local tourism); §§ 30–20–602(2.9) & 30–20–603, C.R.S.2006 (granting counties power to market the development of business within a local improvement district); § 35–29–107, C.R.S.2006 (granting Department of Agriculture power to produce and sell advertising with seal of quality to be used for marketing Colorado agricultural products); *see also* §§ 6–1–304(1)(g), 6–1–712(1)(a), 10–7–102(1)(j), 10–16–907(1), 10–18–101(4), 10–19–114, 12–33–117(1)(s), 12–35–103(9), 12–36–125(1)(b), 12–41–115(10)(j), 24–31–402(1), 24–56–102(1)(a) & (d), 35–28–108(1)(h), 35–28–113(1), 35–29–103(3), 35–33–301(1), 39–21–201(2), 39–28–201(1)(e), 39–28–202(9)(a)(I)(B), C.R.S.2006 (all using "advertising" and "marketing" distinctly).

Thus, contrary to the Town's contention, prior to as well as after the enactment of § 31–15–901(1)(b), the General Assembly was aware of the function of marketing as opposed to advertising, and made distinctions in the use of the terms. *See Wolford v. Pinnacol Assurance,* 107 P.3d 947, 952 (Colo. 2005) (when General Assembly legislates, it is presumed to be aware of its other enactments).

Accordingly, because we must strictly construe grants of power to a statutory municipality and resolve any doubts against the municipality, *see City of Sheridan v. City of Englewood, supra,* 199 Colo. at 350, 609 P.2d at 109, and because of the statute's plain language, we conclude that the General Assembly did not authorize statutory towns to expend taxpayer monies for "marketing" activities. *See State Dep't of Labor & Employment v. Esser,* 30 P.3d 189, 196 (Colo.2001) (court will not read words into statute beyond those chosen by General Assembly).

### III. Is Marketing an Implied or Incidental Power?

The Town argues that, even if its marketing activities do not fall within the express grant of advertising power in § 31–15–901(1)(b), such activities are authorized as "implied or incidental" powers under § 31–15–101(2), C.R.S.2006. Again, we disagree.

Section 31–15–101(2) states, in relevant part: "All such municipalities shall have the powers, authority, and privileges granted by this title and by any other law of this state together with such *implied and incidental powers,* authority, and privileges as may be reasonably necessary, proper, convenient, or useful to the exercise thereof" (emphasis added).

According to dictionary definition, a thing is "incidental" if it is "subordinate to something of greater importance" or has "a minor role." *Black's, supra,* 777.

Here, the authority to market cannot be "incidental" to the authority to advertise because, as discussed, marketing is the broader category within which advertising is contained. Accordingly, marketing is not subordinate to, nor does it have a minor role in, advertising. *Cf. Adams County Golf, Inc. v. Colo. Dep't of Revenue,* 199 Colo. 423, 425–26, 610 P.2d 97, 99 (1980) (operating a golf clubhouse is an incidental implied power of a county's express power to operate a golf course).

Similarly, marketing is a not an "implied" power of advertising. As discussed, "advertising" is the nonpersonal communication of information to the public to promote a product, service, or idea using a form of media, *see* Arens, *supra,* whereas "marketing" is the process of planning and executing the conception, pricing, promotion, and distribution of ideas, goods, services, organizations, and events to meet customers' needs. *See* Boone, *supra.* One can communicate information to promote a product (that is, advertise the product) without conceiving, pricing, and distributing the product (that is, marketing the product). Accordingly, we conclude, the power to market is not implied in the power to advertise. *Cf. Farnik v. Bd. of County Comm'rs,* 139 Colo. 481, 491, 341 P.2d 467, 473 (1959) (statute giving counties authority to "purchase and hold real and personal estate for the use of the county" does not give counties implied power to deal in real estate generally); *Robbins v. Hoover,* 50 Colo. 610, 616, 115 P. 526, 528 (1911) (board of county commissioners does not have implied power to maintain a public hospital).

## IV. Remand is Required

█ We have concluded as a matter of law in parts II and III of this opinion that neither § 31–15–901(1)(b) nor § 31–15–101(2) authorizes a statutory town to conduct marketing activities beyond the narrow scope of advertising, and that the trial court erred in determining otherwise.

Because the court included "marketing" activities within the scope of the Town's enabling act, the trial court also rejected plaintiffs' challenge to all of the specific activities conducted by the Town. But, some of these challenged activities may fall within the definition of advertising set forth herein and, therefore, on different grounds, may still be within the scope of the Town's authority. Because the record does not include sufficient details of the Town's activities, as a reviewing court we are unable to make these determinations. Although the record suggests certain activities, it does not show whether these activities are simply nonpersonal communications to the public (that is, advertising) or whether they are targeted, personal communications (that is, not advertising). For example, the record indicates that the Town may be maintaining a tourism-promotion website. Such a website could be simply advertising if it just passively displays promotional information; however, the website could extend beyond advertising if it were to collect information and provide personal interaction with visitors. Likewise, the distribution of promotional materials could move beyond advertising if accompanied by personal contact or collection of data.

Furthermore, because of the limited record, and because resolution of the issue is contingent on the trial court's determination of whether any of the Town's activities is statutorily authorized as "advertising," we also do not review plaintiffs' alternative argument that the Town improperly expanded its tourism activities through administrative rather than legislative means. *See Bickel v. City of Boulder,* 885 P.2d 215, 234 (Colo.1994) (appellate court not empowered to issue advisory opinions based on hypothetical or uncertain facts); *Tippett v. Johnson,* 742 P.2d 314, 315 (Colo.1987) (same). However, the trial court may address the issue on remand, if appropriate.

Accordingly, we remand to the trial court for further proceedings to determine the details and extent of the Town's tourism-promotion activities. *See People v. Syrie,* 101 P.3d 219, 223 (Colo.2004) (only trial court can make factual findings). If the material facts are undisputed, the trial court may properly

resolve upon summary judgment the legal questions, including which, if any, of the Town's activities are authorized as "advertising" under § 31–15–901(1)(b). *See* C.R.C.P. 56(c); *Nordin v. Madden,* 148 P.3d 218, 221 (Colo.App.2006) (summary judgment proper only when there are no disputed issues of material fact). However, if the facts are disputed, the trial court shall conduct such further proceedings as may be necessary to render a declaratory judgment determining whether the Town's activities exceed its statutory authority.

The summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge VOGT and Judge NEY * concur.